IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CORPORATE EXPRESS OFFICE
PRODUCTS, INC., a Delaware
corporation,

       Plaintiff,                               Civil No. 04-1075-HA

    v.                                         OPINION AND ORDER

KENNETH J. HALEY and SUPPLYRUSH,
INC., an Oregon corporation,

       Defendants.

Robert Lane Carey
Karen L. O'Connor
Barran Liebman, L.L.P.
601 S.W. Second Avenue, Suite 2300
Portland, Oregon 97204
      Attorneys for Plaintiff

Daniel Robert Barnhart
Bullard Smith Jernstedt & Wilson
1000 S.W. Broadway, Suite 1900
Portland, Oregon 97205
      Attorneys for Defendants.

HAGGERTY, Chief Judge:

This action arose as a Complaint and a Motion for a Temporary Restraining Order in August 2004. Plaintiff's Motion for a Temporary Restraining Order was denied, but defendants were ordered to return – and otherwise refrain from using – any information obtained from plaintiff by defendant Kenneth Haley after he resigned from his employment with plaintiff. The parties subsequently moved for partial summary judgment, and oral argument on these motions was heard in court on March 3, 2005. For the following reasons, summary judgment is granted in part and denied in part to plaintiff and defendants.

**BACKGROUND**

Defendant Kenneth Haley (Haley) began his employment as a sales representative selling office products for J. Thayer Company (J. Thayer) in 1992. J. Thayer was acquired by US Office Products (USOP) in 1996. Thereafter Haley continued his employment with USOP.

In 2001 USOP was in bankruptcy and attempting to sell its assets. Plaintiff Corporate Express (CE) was one suitor.

USOP asked Haley to sign a Non-Competition and Non-Solicitation Agreement (hereinafter referred to as the non-compete or the Agreement) in March 2001. Haley signed the Agreement on April 30, 2001. USOP Senior VP Kevin Thimjon signed it on May 3, 2001. Haley asserts that when he signed the Agreement, he was aware that CE was a potential buyer, but was not certain which entity might buy USOP.

Haley was paid a total of $64,714 for signing the Agreement, an amount that was based upon his sales records. A first installment amounting to $16,269.72 was paid to him by USOP on May 10, 2001.

On May 15, 2001, plaintiff CE purchased USOP. Plaintiff accepted USOP's assignment of the Non-Compete. On May 24, 2001, CE paid Haley the second installment of the consideration offered for his signing the Agreement. This payment was in the amount of $48,444.28.

The non-compete includes a covenant not to disclose confidential information, and a covenant not to compete. The agreement was made effective immediately and enforceable by USOP upon its signing. USOP reserved its right to assign rights to the non-compete to Atlantic Acquisition Company – a subsidiary of CE – or to any other entity.

Haley became discontented with CE and CE's attempts to change Haley's compensation plans and commission earnings. He began interviewing for other jobs in June 2004. After asking John Thayer, his former supervisor, to serve as a reference for him, Haley became interested in working again for Thayer. Thayer subsequently asked him to work for co-defendant SupplyRush.

Haley asserts that in early July 2004 he informed his supervisor at CE, Mark Labar (Labar), that he was looking for a new job and was interested in working at SupplyRush. Labar allegedly replied "Great," and Haley advised him that he was making courtesy calls to his business clients to advise them he was leaving CE to find new opportunities.

On July 8, 2004, Haley drafted a termination letter and dated it July 9, 2004. After his workday on July 8, Haley met with Thayer and discussed the accounts he would contact on July 13, his first day of work for SupplyRush. Thayer and Haley assert that Haley did not provide any confidential information about his CE accounts. Haley gave Thayer a non-confidential list

of eight or nine accounts with addresses and contact names, and included some pricing information for copy paper. Haley then took a trip to California.

On the evening of his return on July 12, 2004, Haley accessed his CE e-mail account and completed several transactions. These include forwarding two service inquiries to two CE co-employees, deleting two solicitations from a third party vendor, reviewing an e-mail about letterhead pricing for a customer, and replying to a client's request for assistance by telling her that he would visit on the following Wednesday (their usual meeting day). Haley then resigned the next morning on Tuesday, July 13, 2004.

Haley visited the client he had e-mailed – accompanied by John Thayer – on Wednesday, July 14, 2004. He did not transact any business pertaining to the issues addressed in her e-mail and has not sold her any comparable product from SupplyRush.

Both parties seek partial summary judgment, each moving for judgment as a matter of law on plaintiff's claims for (1) breach of contract; (2) quantum meruit, and (3) breach of fiduciary duty. These motions are addressed below.

**STANDARDS FOR SUMMARY JUDGMENT**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the

absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. Assuming that there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

Special rules of construction apply to evaluating summary judgment motions: 1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; 2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party; and 3) the court must assume the truth of direct evidence set forth by the nonmoving party if it conflicts with direct evidence produced by the moving party. *T.W. Elect. Serv. v. Pac. Elect. Contractors*, 809 F.2d 626, 630 (9th Cir. 1987). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

The issue of material fact required by Rule 56 to entitle a party to proceed to trial need not be resolved conclusively in favor of the party asserting its existence; all that is required is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial. *Id*.

At this stage of the litigation, the judge does not weigh conflicting evidence or make credibility determinations. These determinations are the province of the fact finder at trial. *Id., see also Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996) (on a motion for summary judgment, the court is not to weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial).

## ANALYSIS

1.     BREACH OF CONTRACT

Haley's non-compete was entered into with USOP on April 30, 2001. CE purchased USOP and was assigned the rights under the agreement on May 15, 2001. Defendants argue that the non-compete is void and unenforceable under Oregon law. Under ORS 653.295, a non-competition agreement is void and shall not be enforced unless the agreement is entered into upon either (a) the initial employment of the employee with the employer; or (b) subsequent bona fide advancement of the employee with the employer. These rights cannot be waived, and employers are not permitted to "buy" such agreements. *See First Allmerica Fin. Life Ins. Co. v. Sumner*, 212 F. Supp. 2d 1235 (D. Or. 2002) (offering more money is insufficient to constitute job advancement). Haley acknowledged in deposition that in hindsight, the agreement provided him an opportunity "to sign on as a Corporate Express person," but that when he signed, Haley did not know with certainty who was purchasing USOP. Haley claims that he knew only that CE was a potential successor to USOP.

While it is true that the Assignment clause in the Agreement states that USOP could assign the rights to the Agreement to any of USOP's subsidiaries, CE (or its subsidiary) was also specifically identified in the Agreement as USOP's buyer. Another term of the Agreement provided that Haley agrees "that the proposed sale of substantially all of the company's assets (a) to Atlantic Acquisition Corporation, a wholly owned subsidiary of Corporate Express Office Products, Inc., [as specified in the related Bankruptcy Court Order] shall be deemed a Sales Transaction. . . ."

The Agreement identified USOP as Haley's then-current employer, and USOP negotiated and signed Haley's Agreement. However, given the Agreement's repeated acknowledgment of, and reference to, assignees and successors, including the specific identity of a subsidiary of CE as the proposed buyer, and the explicit provision that USOP's successor would be paying a large portion of the consideration being offered to Haley for signing the Agreement, the court is compelled to construe the Agreement properly as a contract between Haley and USOP's successor, made in anticipation of initial employment.

The Agreement stated that one-quarter of the consideration paid to Haley for his signing would be paid by USOP and three-quarters would be paid following the closing of a "Sale Transaction" of USOP to a buyer. Haley also expressly agreed that any successor could enforce the Agreement as if it were his original employer. USOP's sale occurred two weeks after Haley signed the non-compete. This deviation is not fatal to plaintiff's breach of contract claim. *See Olsten Corp. v. Sommers*, 534 F. Supp. 395 (D. Or. 1982) (an employment contract containing a non-competition agreement that is signed on a date different from, but close to, the date an employment offer is accepted is enforceable).

There is no evidence presented that Haley was coerced into signing this Agreement. He was entirely free to leave his bankrupt employer USOP, or he could agree to sign the proposed non-compete in exchange for consideration of over $64,000 and stay on to work with CE. The non-compete fairly identifies USOP as Haley's then-current employer, but also plainly contemplates a new employer, CE, emerging shortly and paying three-quarters of the consideration owed to Haley for the non-compete. The Agreement was signed within weeks of Haley's employment with CE and is therefore construed as valid under Oregon law as being

executed in anticipation of Haley's new employment. Accordingly, plaintiff is entitled to summary judgment on its breach of contract claim.

2.  QUANTUM MERUIT CLAIM

The quantum meruit claim brought by plaintiff is in the alternative to its breach of contract claim. Accordingly, in light of this court's ruling above, the quantum meruit claim is not viable and is dismissed as moot. *See Kashmir Corp. v. Patterson*, 43 Or. App. 45, 48, 602 P.2d 294, 296 (1979).

3.  BREACH OF FIDUCIARY DUTY

CE also seeks damages arising from Haley's alleged breach of fiduciary duties owed to CE. Such damages, if any, would arise from Haley's conduct prior to Haley's notification to CE of his resignation on July 13, 2004. This conduct includes meeting with Thayer to provide him with a list of eight or nine clients and some pricing information, and checking and responding to his business e-mail on the evening before he formally resigned.

An employee may prepare to compete with his or her employer prior to terminating that employment as long as the employee refrains from using confidential information peculiar to the employee's business. *West. Med. Consultants, Inc. v. Johnson*, 80 F.3d 1331, 1336 (9th Cir. 1996). There is no showing that defendant shared or deployed confidential information in his preparations, or that measurable damages from any breach of fiduciary duties occurred. Similarly, although Haley acknowledges that on the evening before he resigned he sent a reply to an e-mail that he had received from one client, and confirmed plans to meet with her after resigning (and did so while accompanied by Thayer), there is no evidence of any damages arising from this conduct. There is no evidence that Haley attempted to sell a product to this

client, and SupplyRush did not profit from Haley's subsequent encounter with her. Haley's actions fail to rise to a breach of fiduciary duty, and, at any rate, there is no likelihood that plaintiff could establish actual injury from this challenged conduct. Accordingly, defendants are entitled to summary judgment on plaintiff's breach of fiduciary duty claim.

**CONCLUSION**

For the reasons provided above, plaintiff's Motion for Partial Summary Judgment (Doc. # 19) and defendants' Motion for Partial Summary Judgment (Doc. # 23) are granted in part and denied in part. Plaintiff is entitled to summary judgment on its Breach of Contract claim, defendants are entitled to summary judgment on plaintiff's Breach of Fiduciary Duty claim, and plaintiff's alternative Quantum Meruit claim is dismissed as moot. The parties are ordered to consult and file a Joint Status Report addressing the question of how to best determine and award damages, if any, arising from defendants' breach of contract claim. This Joint Status Report must be filed no later than May 7, 2005.

    IT IS SO ORDERED.

    DATED this   12   day of April, 2005.

    /s/Ancer L.Haggerty
    Ancer L. Haggerty
    United States District Judge